## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CHRISTOPHER KERTESZ, individually and on behalf of a class of similarly situated individuals,<br><br>      Plaintiff,<br><br>            v.<br><br>RICK's CABARET INTERNATIONAL, INC., A Texas corporation, and RCI INTERNET SERVICES, INC., A Texas corporation.<br><br>      Defendants. | Case No. 11-cv-61289-RNS<br><br>Honorable Robert N. Scola, Jr. |

## MOTION FOR AND MEMORANDUM IN SUPPORT OF
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

        A.      Plaintiff's Allegations ................................................................................ 2

        B.      Litigation and Private Mediation .............................................................. 3

III.    TERMS OF THE SETTLEMENT .......................................................................... 4

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ..................... 6

        A.      The Numerosity Requirement is Satisfied ............................................... 7

        B.      The Commonality Requirement is Satisfied ............................................ 8

        C.      The Typicality Requirement is Satisfied ................................................. 9

        D.      The Requirement of Adequate Representation is Satisfied .................... 10

        E.      The Proposed Settlement Class Meets the Requirements of
                Rule 23(b)(3) .......................................................................................... 11

                i.      Commons issues of fact and law predominate ............................. 11

                ii.     The class mechanism is a superior method of adjudication .......... 12

V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED
        AS CLASS COUNSEL ........................................................................................ 13

VI.     PRELIMINARY APPROVAL ............................................................................. 14

        A.      As An Initial Matter, The Settlement Is Not A "Coupon" Settlement
                Requiring Heightened Scrutiny Under CAFA ....................................... 14

        B.      The Proposed Settlement Warrants Preliminary Approval.. ................... 16

VIII.   NOTICE TO THE CLASS SHOULD BE APPROVED . ................................... 19

VIII.   CONCLUSION ................................................................................................... 20

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................*passim*

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................ 19

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................................ 9

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) ............................................ 8, 12

**United States Circuit Court of Appeals Cases:**

*Appleyard v. Wallace*, 754 F.2d 955 (11th Cir. 1985) ...................................................... 9

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ............................................... 17

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008) ....................................... 12

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ....................................... 7

*Evans v. U.S. Pipe & Foundry*, 696 F.2d 925 (11th Cir. 1983) ......................................... 7

*Franze v. Equitable Assurance*, 296 F.3d 1250 (11th Cir. 2002). ..................................... 6

*Griffin v. Carlin,* 755 F.2d 1516 (11th Cir. 1985) ......................................................... 10

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ............................................. 12-13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646 (7th Cir. 2006) ............... 15

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009). ................................... 7

**United States District Court Cases:**

*Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692 (S.D. Fla. 2004). ..................................... 7

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ........... 17

*Browning v. Yahoo Inc.*, No. C04-01463 HRL,
    2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........................................................ 15

*Cheney v. Cyberguard Corp.,* 213 F.R.D. 484 (S.D. Fla. 2003) ......................................... 8

*Coastal Neurology, Inc. v. State Farm. Mut. Auto. Ins. Co.*,
    271 F.R.D. 538 (S.D. Fla. 2010) .......................................................................... 10

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) ..................... 16

*Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC,
    2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .......................................................... 15

iv

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) ................................8, 10

*In re Terazosin Hydrochloride*, 220 F.R.D. 672 (S.D. Fla. 2004) ....................................................8-9

*Jones v. Commerce Bancorp Inc.,* 2007 WL 2085357 (D.N.J. July 16, 2007) ...............................17

*Leszczynski v. Allianz. Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997) ...........................................................7

*Murray v. Auslander,* 244 F.3d 807 (11th Cir. 2001) ........................................................................9

*Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000)……………………...15

*Smith v. Wm. Wrigley,* 2010 WL 2401149 (S.D. Fla. June 15, 2010) ...............................................17

*Sobel v. Hertz Corp.*, No. 06-cv-0545-LRH-RAM,
   2010 WL 2559565 (D. Nev. June 27, 2011) ................................................................................15

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ....................................14, 16

*Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996). .......................................................7, 8

## Statutory Provisions:

28 U.S.C. § 1712(e)……………………………………………………….…………………..14, 16

47 U.S.C. § 227 ..............................................................................................................................1, 9

Fed. R. Civ. P. 23 ......................................................................................................................*passim*

## Miscellaneous Authorities:

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) ...... 16-17

*Manual for Complex Litigation* (Fourth) § 21.632 ...........................................................................6

Plaintiff Christopher Kertesz ("Plaintiff"), by and through his undersigned counsel, hereby respectfully moves the Court for an order (1) certifying the proposed class for settlement purposes, (2) approving the form and content of the proposed notice plan, (3) appointing Plaintiff as Class Representative, (4) appointing Plaintiff's counsel as Class Counsel, (5) granting preliminary approval of the Parties' proposed class action settlement, and (6) scheduling a fairness hearing.  In support of the instant motion, Plaintiff states as follows:

## I.      INTRODUCTION.

This motion and the Parties' proposed class action settlement is the result of almost a year of hard-fought litigation and several rounds of arms' length settlement negotiations between the Parties, culminating in a day-long mediation presided over by a well-respected mediator. The proposed settlement, if approved, will finally resolve the claims asserted against the Defendants in this matter and will provide the Settlement Class with substantial relief as well as prospective measures necessary to ensure that Defendants' alleged conduct does not continue into the future.

Plaintiff's claims in this case arise from Defendants sending their more avid patrons promotional text messages that exceeded the monthly limitations—no more than eight per month—that Defendants themselves placed on the sending of messages pursuant to their Terms of Use, which Plaintiff agreed to.  Plaintiff alleges that such conduct violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  After engaging in discovery and extensive discussions regarding the potential resolution of this matter, the Parties engaged in a private mediation presided over by Rodney A. Max.  In the end, those efforts resulted in a strong settlement for Plaintiff and the Settlement Class. Under the terms of the settlement, each Settlement Class Member who submits a valid claim will receive the equivalent of $200 for each unauthorized text message received in the form of RCI Access Certificates, which may be used in

the same manner as cash at any of Defendants' 23 nationwide club locations.  Defendants have

also agreed to pay for the cost of notice, to pay attorneys' fees and costs to proposed Class

Counsel, and to pay an Incentive Award to the proposed Class Representative.  Additionally, the

settlement provides prospective relief designed to ensure that Defendants will no longer send

unauthorized text messages to consumers in the future.

 All told, the settlement provides the Settlement Class with significant relief for each

unauthorized text message that they received, and, given the inherent risks and expenses that

Plaintiff faces in this litigation, the results achieved are well beyond those required to preliminarily

approve the settlement.  Plaintiff therefore requests that the Court grant the instant motion in its

entirety.

## II. FACTUAL AND PROCEDURAL BACKGROUND.

### A. Plaintiff's Allegations.

 On September 19, 2011, Plaintiff filed his First Amended Complaint (the "Complaint").

(Dkt. No. 24; cited herein as "Compl."). In his Complaint, Plaintiff alleges that Defendants Rick's

Cabaret International, Inc. ("Rick's") and RCI Internet Services, Inc. ("RCI") (collectively,

"Defendants") sent promotional text messages to consumers in violation of the TCPA.  (Compl. ¶¶

14-15.)

 Through a series of wholly owned subsidiaries, Rick's owns and operates numerous adult

entertainment nightclubs throughout the United States.  (*Id.* ¶ 7.)  In an effort to promote its

network of clubs, Rick's solicited its customers to sign up to receive promotional text message

notifications, which would purportedly provide notice of events and specials by sending text

messages directly to consumers' cell phones.  (*Id.* ¶ 2.)  Rick's maintained dedicated web pages on

its primary website as well as on the websites of individual nightclubs that permitted consumers to register their cell phone numbers to receive text message from Defendants.  (*Id.* ¶ 13.)

Defendants established a uniform set of terms and conditions that governed their delivery of text message alerts to consumers.  (*Id.* ¶ 14.)  In relevant part, those terms expressly provided that Defendants would transmit no more than eight text message alerts to an individual consumer in a single month.  (*Id.*)  Plaintiff alleges, however, that Defendants systematically and intentionally directed the mass transmission of substantially more than eight text messages to individuals each month, in violation of Defendants' own terms and the TCPA.  (*Id.* ¶ 15.)  While Plaintiff registered to receive text message alerts in accordance with Defendants' terms and conditions, at no time did he or the other members of the putative class consent to receiving text messages from Defendants in excess of that limit.  (*Id.* ¶ 21.)

### B.  Litigation and Private Mediation

Plaintiff filed his initial Class Action Complaint June 7, 2011 against Defendant Rick's. Shortly thereafter, the Parties engaged in discussions regarding the ownership structure of Rick's and the method by which it transmitted text messages to consumers.  As a result of those discussions, Plaintiff filed his First Amended Class Action Complaint, adding Defendant RCI, on September 19, 2011.  (Dkt. No. 24.)

Plaintiff subsequently served several sets of written discovery requests on Rick's, including interrogatories, requests for the production of documents, and requests to admit.  (Declaration of Rafey S. Balabanian [cited as Balabanian Decl.] ¶ 4.)  Plaintiff also interviewed, in the presence of defense counsel, RCI's corporate representative regarding the technical aspects of Defendants' systems for sending text messages to their patrons.  (Balabanian Decl. ¶ 5.)  During the course of discovery, the Parties also began to discuss the potential for early resolution.  (Balabanian Decl. ¶

6.)  Following a set of productive preliminary discussions, on October 26, 2011, the Parties participated in a full-day private mediation with Rodney A. Max of the mediation firm Upchurch Watson White & Max.  (Balabanian Decl. ¶ 7.)  With the assistance of Mr. Max, the Parties were able to reach an agreement in principle with respect to the relief due to the Settlement Class. (Balabanian Decl. ¶ 8.)  Only after they reached agreement on the relief due to the Settlement Class did the Parties begin negotiations regarding the amount of costs and attorneys' fees to be paid to proposed Class Counsel and an Incentive Award to be paid to Plaintiff.  (Balabanian Decl. ¶ 9.) Those negotiations took place over the course of several months, and it was not until February 14, 2012 that the Parties were able to reach an agreement in principle on payment of attorneys' fees to proposed Class Counsel and an incentive award to the proposed Class Representative.  (Balabanian Decl. ¶ 9.)

## III.  TERMS OF THE SETTLEMENT

The terms of the settlement follow:

**A.  *Class Definition.***  The Settlement Class includes all individuals in the United States and its territories who signed up online to receive SMS text message alerts from Defendants pursuant to Defendants' written terms and conditions expressly stating that a limited number of text messages would be transmitted by Defendants within a monthly period and who received text messages from Defendants within a monthly period which exceeded the stated limit.  (Settlement Agreement ¶ 1.34, a true and accurate copy of which is attached hereto as Exhibit 1.)

**B.  *Class Relief.***  Each Class Member who submits a timely claim will receive four RCI Access Certificates, which are collectively worth $200 (and individually worth $50), for each text message received in excess of Defendants' monthly limit of eight text message alerts.  (*Id.* ¶ 2.1(a).)  Each RCI Access Certificate is fully transferable and may be used at any of Defendants'

4

23 club locations for any non-performance purchase, including but not limited to entry fees, food and drink, and merchandise, all at the same prices available to other customers. (*Id.* ¶ 2.1(a)(ii).) RCI Access Certificates will not expire for at least 24 months after the date of issuance. (*Id.* ¶ 2.1(a)(iii).)

An individual Class Member may receive a maximum of 200 RCI Access Certificates, totaling $10,000. (*Id.* ¶ 2.1(a)(i).) Individual clubs may limit the total number of RCI Access Certificates used by a single person (or group) to no more than twenty RCI Access Certificates (worth $1,000) in a single 24-hour period, absent advanced permission. (*Id.* ¶ 2.1(a)(v).)

To be eligible for a payment pursuant to the settlement, Settlement Class Members must submit a claim that (i) is postmarked no later than 30 (thirty) days after the Final Fairness Hearing, (ii) contains all of the required information set forth in the claim form, (iii) satisfies the requirements of the Settlement Agreement, and (iv) is signed or electronically verified under penalty of perjury by the Class Member submitting the claim. (A true and accurate copy of the Claim Form is attached to the Settlement Agreement as Exhibit C.)

## C. *Additional Relief.*

**1.** **Prospective Relief.** If elected on the claim form, Defendants have agreed to permanently remove the phone numbers of Settlement Class Members from any list or database of numbers to which text messages could be sent by or on behalf of Defendants or their subsidiaries. (*Id.* ¶ 2.2.) In addition, Defendants have agreed that, to the extent they continue to disseminate SMS text messages to registered cellular phone numbers, safeguards will be implemented to ensure that they comply with any express limitations on the number of text messages sent to an individual cellular phone number. (Settlement Agreement. ¶ 2.3.)

2.       **Incentive Award for Class Representatives.**  In recognition of his efforts on behalf of the Settlement Class, the Class Representative shall, subject to Court approval and in addition to any recovery that he is entitled to as a Settlement Class Member, be awarded an Incentive Award of five thousand dollars ($5,000).  (Settlement Agreement. ¶ 8.3.)

3.       **Attorneys' Fees and Expenses.**  Subject to Court approval, Defendants have agreed to pay proposed Class Counsel one hundred fifty thousand dollars ($150,000) in attorneys' fees and for reimbursement of expenses (including court costs) associated with this case.  (Settlement Agreement ¶ 8.1.)

D.       *The Release by Plaintiffs and the Settlement Class.*  In exchange for the above-described relief, Defendants and each of their related entities will receive a full release of all claims related to Defendants' dissemination of text messages to customers who registered to receive such alerts on any of Defendants' websites.  (Settlement Agreement ¶ 3.)

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for class certification.  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632.  Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *Franze v. Equitable Assurance*, 296 F.3d 1250, 1252-53 (11th Cir. 2002).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b).  *Amchem*, 521 U.S. at 614.  In this case, Plaintiff

seeks certification of the Settlement Class under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all Class Members predominate over issues affecting only individual members, and (ii) the maintenance of a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *Id.* at 615; *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009).

As discussed below, the proposed Settlement Class meets the requirements of Rules 23(a) and 23(b)(3), and therefore, certification of the class for settlement purposes is appropriate.

**A.      The Numerosity Requirement is Satisfied.**

Rule 23(a)'s numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).  Plaintiffs need not calculate "the precise number of class" members.  *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 696 (S.D. Fla. 2004).  Instead, courts may exercise discretion and "make common sense assumptions in order to find support for numerosity." *Leszczynski v. Allianz. Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997) (citing *Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983)).  While there is no specific size requirement that the class must meet, this Circuit has held that classes with more than forty members satisfy the numerosity requirement. *Leszcynski,* 176 F.R.D. at 669 (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  Further, because the Court's focus is on the practicality of joinder, "courts must take other factors into consideration." *Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla. 1996).  These factors include the location of class members, the efficiency of the judicial process, and the size of the class members' claims. *Id.*

The proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Defendants' records, over 300 individuals signed up to receive text message alerts from Defendants, the majority of whom received in excess of eight text messages in one or more

monthly periods.  (Balabanian Decl. ¶ 6 ) This "easily exceeds the minimum threshold recognized by the Eleventh Circuit." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 672 (S.D. Fla. 2011).  Moreover, Settlement Class Members reside throughout the United States, further rendering joinder impracticable. *See Walco Inv., Inc.*, 168 F.R.D. at 324.  Due to the large number of Settlement Class Members and their geographical diversity, there is little question that joinder of all Class Members would be impractical or that Rule 23(a)'s numerosity requirement is satisfied.

### B.       The Commonality Requirement is Satisfied.

Rule 23(a) next requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality requires the representative plaintiff to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011).  Stated differently, commonality requires that the claims of the class "depend upon a common contention…of such a nature that is capable of classwide resolution— which means that determination of its truth or falsity will recover an issue that is central to the validity of each one of the claims in one stroke." *Id.*  Nevertheless, "[t]he threshold for commonality is not high." *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 490 (S.D. Fla. 2003). In fact, "a single common question is sufficient to satisfy" commonality. *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004).  Further, when "the complaint alleges that Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met." *Id*. at 685.

In this case, the members of the Settlement Class share several common questions of fact, including: (i) whether Defendants systematically sent more than eight text messages per month to registered recipients in violation of the governing terms and conditions, and (ii) whether Defendants failed to monitor or limit the number of text messages that it transmitted to registered

recipients.  Those common factual questions lead to several legal questions common to all Settlement Class Members, including: (i) whether Defendants' conduct violated the TCPA, and (ii) whether Class Members are entitled to treble damages based on the willfulness of Defendants' conduct.  In addition, Defendants' practice of sending unauthorized text messages in excess of the monthly limits established by Defendants' terms and conditions is "a standardized course of conduct that affects all class members."  *In re Terazosin,* 220 F.R.D. at 685.  Therefore, Plaintiff and the Class easily meet the low-threshold requirements of commonality.

> **C.     The Typicality Requirement is Satisfied.**

The third requisite to certification under Rule 23(a) asks whether the plaintiff's claims are typical of those of the proposed Settlement Class.  Fed R. Civ. P. 23(a)(3).  The typicality and commonality requirements are closely related and "tend to merge" in practice.  *Gen. Tel. Co. of Sw,*, 457 U.S. at 157, n.13.  Typicality is required so that "the plaintiff will advance the interests of the class members by advancing his or her own interests."  *In re Terazosin*, 220 F.R.D. at 687.  A plaintiff can establish typicality by showing "that the same unlawful conduct was directed at or affected both the class representatives and the class itself."  *Id.* at 686.  In fact, as long as there is a "strong similarity of legal theories" between the plaintiff and class members, factual differences will not preclude a finding of typicality.  *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) (quoting *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985)).

As alleged in the Complaint, Plaintiff and the proposed Settlement Class share the exact same legal theories and suffered precisely the same injuries.  That is, both Plaintiff and the Settlement Class registered online to receive text message alerts from Defendants, agreed to receive a maximum of eight text messages per month, and each received in excess of that amount in a single monthly period.  Moreover, Plaintiff and the other Settlement Class Members were

subject to the same conduct—the receipt of text messages without express consent—and they

suffered the same injury, entitling them to statutory damages under the TCPA.  Therefore, Plaintiff

can "stand in [Class Members'] shoes for purposes of the litigation," because, by pursuing his own

claims, Plaintiff will necessarily advance the interests of the proposed Settlement Class and their

claims.  *Coastal Neurology, Inc. v. State Farm. Mut. Auto. Ins. Co.*, 271 F.R.D. 538, 547 (S.D. Fla.

2010).  Thus, Plaintiff's claims are typical of those of the Settlement Class, and Rule 23(a)'s

typicality requirement is satisfied.

**D.     The Requirement of Adequate Representation is Satisfied.**

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly

and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Amchem*, 521 U.S. at

625 (the adequacy requirement is meant to "uncover conflicts of interest between named parties

and the class").  To satisfy the adequacy requirement, class representatives and their counsel must

establish that (i) their claims are not in substantial conflict with those of the proposed class, and (ii)

that they will vigorously prosecute the action. *In re Checking Account Overdraft Litig.,* 275 F.R.D.

at 675. To determine whether the representatives satisfy the second prong, courts look to "whether

plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed

litigation." *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir. 1985).

Here, Plaintiff has the same interests as the proposed Settlement Class—they have all been

sent unauthorized text messages by Defendants in excess of the agreed-upon limits and in violation

of the TCPA.  As a result, they all have the same interest in recovering statutory damages from

Defendants and ensuring that the conduct does not continue in the future.  Plaintiff has no interests

antagonistic to those of the proposed Settlement Class and his pursuit of this action demonstrates

10

as much.  Indeed, Plaintiff has and will continue to advocate vigorously on behalf of the Settlement Class.

Similarly, Plaintiff's counsel are well-respected leaders of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. They have regularly engaged in major complex litigation involving the TCPA, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout this country. (*See* Firm Resume of Edelson McGuire LLC, a true and accurate copy of which is attached as Exhibit 2-A to Balabanian Decl.)  Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and they will continue to do so through its pendency.

Accordingly, Rule 23(a)'s adequacy requirement has been established, as both Plaintiff and his counsel have and will continue to adequately represent the Settlement Class.

### E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Upon satisfying Rule 23(a)'s prerequisites, a plaintiff must also demonstrate that the proposed class satisfies one of the three subsections of Rule 23(b).  *Amchem*, 521 U.S. at 614. Here, Plaintiff seeks to certify the proposed Settlement Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3). The Settlement Class meets both of these requirements.

### i.      Common Issues of Law and Fact Predominate.

First, the inquiry into whether common questions predominate is generally focused on whether there are common liability issues that may be resolved efficiently on a class basis.

*Amchem*, 521 U.S. at 623; *Dukes*, 131 S. Ct. at 2551-57.  Although common issues must predominate, they need not be exclusive.  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1324 (11th Cir. 2008).  Instead, common issues predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

In order to prevail on their claims, Plaintiff and each Settlement Class Member would be required to establish that Defendants transmitted more than eight text messages to them within a single monthly period.  Further, Plaintiff and each Settlement Class Member would be required to disprove a defense that Defendants had consent to send registered customers in excess of eight text messages in a single month.  Plaintiff alleges that the manner in which he and Settlement Class Members registered to receive text message alerts and were presented with Defendants' terms and conditions is identical.  Thus, their claims will be subject to common proofs applicable to the Class as a whole, and the common questions resulting from Defendants' alleged misconduct predominate over any issues affecting only individual Class Members, such as the amount of damages each Settlement Class member is entitled to recover.  *See*, *e.g.*, *Klay*, 382 F.3d at 1259-60 (finding that individual damages are "no impediment to class certification" if they can easily be calculated).

ii.     The Class Mechanism is a Superior Method of Adjudication.

Finally, the instant class action is superior to any other available method for the fair and efficient adjudication of the claims in this case. The superiority requirement focuses on the advantages of class action litigation over other methods that are available to class members.  *Klay*, 382 F.3d at 1269.  Specifically, courts must consider efficiency with regard to both time and resources.  *Id.* at 1270.  Class actions are found to be "far superior to having the same claims

12

litigated repeatedly, wasting valuable judicial resources." *Id.*  Additionally, courts find class actions superior when the class members' claims are too small to pursue individually. *Id.*.

Absent class treatment in this case, each Settlement Class Member would be required to present the same or essentially the same legal and factual arguments in separate and duplicative proceedings, the result of which would be multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Inefficiency aside, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Moreover, certification will also promote consistency of rulings and judgments, giving all parties the benefit of finality.  And finally, because this action has now been settled—pending approval of the Court—the Court need not be concerned with issues of manageability related to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case…would present intractable management problems…."). Thus, the superiority requisite is also met.

Having satisfied each of the requirements for class certification under Rules 23(a) and 23(b)(3), this Court should certify the proposed Settlement Class for settlement purposes.

## V.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.

When the Court grants class certification under Rule 23, it must also appoint class counsel who will fairly and adequately represent the interests of the class. In making this determination, the Court must consider proposed class counsel's (i) work in identifying or investigating potential claims, (ii) their experience in handling class actions and the types of claims asserted in the case at hand, (iii) their knowledge of the applicable law, and (iv) the resources they have committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

13

As discussed above, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the investigation of the claims at issue in this case, and will continue to do so through its pendency. (Balabanian Decl. ¶ 16.)  Considering the Parties' extensive informational exchanges through formal and informal discovery and several months of negotiations, proposed Class Counsel have a superior knowledge of both the factual and legal elements of the claims alleged in this case.  And, it was with this knowledge that proposed Class Counsel was able to successfully negotiate the settlement now before this Court.  Moreover, and as discussed above, proposed Class Counsel are well-respected members of the legal community, have significant experience litigating similar class actions, and have frequently been appointed lead class counsel by courts throughout the country.  (Balabanian Decl. ¶ 15, 18.)

For these reasons, the Court should appoint Plaintiff's counsel to serve as Class Counsel.

## VI.    PRELIMINARY APPROVAL.

### A.    As An Initial Matter, The Settlement Is Not A "Coupon" Settlement Requiring Heightened Scrutiny Under CAFA.

When a proposed settlement provides for class members to be awarded coupons, "the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). While "[s]everal courts have interpreted section 1712(e) as imposing a heightened level of scrutiny in reviewing [coupon settlements]," *see True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010), the RCI Access Certificates available to Settlement Class Members in this case are not traditional "coupons" under Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Accordingly, heightened scrutiny is not warranted.

Here, the RCI Access Certificates are fully transferable. (Settlement Agreement ¶ 2.1(a).) Given that use of the Certificates is not limited to Class Members, these Certificates can be bought,

sold, or otherwise exchanged on the secondary market. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 983 (E.D. Tex. 2000) ("The fact that the coupons are freely transferable increases the probability that a secondary market will develop and gives class members the opportunity to sell their coupons or acquire other coupons if they so desire."). Thus, the cash-like attributes of the Certificates provide significant value to the Settlement Class Members.

Moreover, a coupon settlement generally offers class members coupons or discounts for the defendant's products or services. *See, e.g., Sobel v. Hertz Corp.*, No. 06-cv-0545-LRH-RAM, 2010 WL 2559565, at *3-4 (D. Nev. June 27, 2011). Therefore, a "noncash benefit cannot be a coupon if it allows a consumer to buy an *entire* product." *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008); *see Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir. 2006) ("[P]re-paid envelopes are not identical to coupons, since they represent an entire product, not just a discount on a proposed purchase."); *Browning v. Yahoo Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2007) ("[T]he in-kind relief offered in this case is not a 'coupon settlement' because it does not require class members to spend money in order to realize the settlement benefit.").

Finally, Settlement Class Members have demonstrated great interest in visiting Defendants' clubs—and consequently, in using RCI Access Certificates—by voluntarily registering to receive text messages from Defendants. As Plaintiff alleges, customers were required to seek out a dedicated web page on Rick's website (or the websites of individual clubs) in order to sign up to receive text message alerts. (Compl. ¶ 13.) The purpose of the text messages, as detailed on each registration page, was to alert customers of drink specials, deals, and other significant events occurring at club locations specifically selected by Class Members. (Compl. ¶ 2.) The text message alerts were sent at the request of Class members, but in excess of the agreed upon eight

(8) monthly text messages, which is ultimately what gave rise to liability under the TCPA.  Hence, the Settlement Class is comprised of individuals who are highly interested in Defendants' clubs and, based on their past conduct, are substantially likely to use the RCI Access Certificates provided by the settlement.

        In sum, each Class Member will receive Certificates collectively valued between $200 and $10,000 depending on the number of text messages received, and in no event will Class Members be obligated to pay Defendants any money in order to redeem their Certificates. Thus, the relief offered in this case is not a "coupon settlement," because Settlement Class Members need not spend money to realize the benefit of the certificates, and may use the certificates to purchase "entire products" at any of Defendants' locations. *See id.*

        Accordingly, the Settlement Agreement enjoys a presumption of reasonableness and need not be reviewed under the "heightened scrutiny" required when a Court is presented with a "coupon" settlement. *See* 28 U.S.C. § 1712(e); *True*, 749 F. Supp. 2d at 1069.

        **B.      The Proposed Settlement Warrants Preliminary Approval.**

        In addition to certifying the Settlement Class, the Court must also determine whether the proposed settlement warrants preliminary approval.  When deciding whether to grant preliminary approval, courts rely on a well-established two-step process.  NEWBERG ON CLASS ACTIONS § 11.25, at 38-39 (4th ed. 2002); *see also Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1298-99 (S.D. Fla. 2007).  First, a preliminary, pre-notification hearing is held to determine whether the proposed settlement is "within the range of possible approval." NEWBERG ON CLASS ACTIONS § 11.25, at 38-39.  The preliminary approval hearing is not a fairness hearing, but rather, a hearing "to determine whether it is reasonable to issue notification to settlement class members of the settlement's terms."  *Figueroa*, 517 F. Supp. 2d at 1298.  A court will generally grant

preliminary approval when the parties engaged in good faith negotiations to reach the settlement. *Smith v. Wm. Wrigley,* 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  In the end, preliminary approval "is granted unless a proposed settlement is obviously deficient."  *Id.*, at *2 (quoting *Jones v. Commerce Bancorp Inc.,* 2007 WL 2085357, at *2 (D.N.J. July 16, 2007)).  If the Court finds the proposed settlement to be within the range of possible approval, the case proceeds to the second step in the review process—the final fairness hearing.

        In class action litigation, "[t]here is an overriding public interest in favor of settlement." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).  In addition, "the Court must rely upon the judgment of experienced counsel" when determining whether it should grant preliminary approval.  *Id.* at 467.  The factors to be considered in the preliminary approval stage include (i) the likelihood that the class would succeed on the claims at trial, (ii) the range of recovery possible for the class, (iii) where along the range the settlement will be considered fair, (iv) the cost, length, and complexity of the litigation, (v) the amount of opposition to settlement among affected parties, and (vi) the stage of litigation.  *Id. (citing to Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

        Applying these factors to the instant settlement demonstrates that it is fair, reasonable, and adequate, and that it falls well within the range of possible approval.  First, while Plaintiff believes that his claims against Defendants are strong, well supported by applicable law, and if pursued, would result in a judgment in favor of the Settlement Class, he recognizes the certainty of recovery that the proposed settlement represents. Specifically, with only a minimal showing (*i.e.*, a sworn claim form that includes the telephone number that received unauthorized text messages), Settlement Class Members will be entitled to receive RCI Access Certificates valued at $200 for each contested text message, for a total of up to $10,000 for each individual Class Member.

(Settlement Agreement ¶ 2.1.)  Moreover, Defendants have agreed to erase Class Members' phone numbers from their records and implement additional safeguards to ensure that they comply with any limitations on text messages in the future.  (Settlement Agreement ¶ 2.3.)

By providing each Settlement Class Member with between $200 and $10,000 worth of RCI Certificates, the Settlement compensates the Class with fully transferable certificates that may be used as currency at any of Defendants' nightclubs—nightclubs that Settlement Class Members have already showed great interest in by registering to receive limited promotional text message alerts.  (Settlement Agreement ¶ 2.1.)  Given the robust notice plan, coupled with the ease with which Settlement Class Members may file claims in response to the unauthorized text messages, proposed Settlement Class Counsel believe that the recovery for the Settlement Class is well within the range of possible approval.  (Settlement Agreement ¶ 4.)

Plaintiff also recognizes that despite his belief in the strength of his claims, the expense, duration, and complexity of protracted litigation would be substantial and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses from across the country.  The fact that the instant settlement was reached only after months of litigation and negotiation, the exchange of discovery and informal information between Parties, and a full day of arms' length negotiations with an experienced mediator, serves to reinforce that concern.  In addition, in light of the complexity of the issues and the amount in controversy, the defeated party would likely appeal, further delaying any recovery by the Class. Given the strength of the Settlement, Plaintiff anticipates an overwhelmingly favorable reaction with no significant opposition by Settlement Class Members.

For all of these reasons, Plaintiff and proposed Class Counsel firmly believe that the relief provided by the Settlement weighs heavily in favor of its approval.  Accordingly, the Court can

appropriately find that the proposed settlement represents a fair, reasonable, and adequate result and that it warrants preliminary approval.

## VII.    NOTICE TO THE CLASS SHOULD BE APPROVED.

Finally, Rule 23(b)(3) requires that in cases such as this, where the relief sought includes damages and prospective relief, notice must be disseminated to the proposed class.  The substance of the notice must describe in plain language the nature of the action, the definition of the certified class, and the class claims and defenses at issue.  *See* Fed. R. Civ. P. 23(c)(2)(B).  The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members.  *Id.*  Additionally, dissemination of the notice must comport with both Rule 23 and due process, which require that a class receives "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The notice plan in this case satisfies Rule 23's notice requirements and due process.

The Parties' settlement contemplates a three-part notice plan.  First, Defendant RCI, with the oversight of the Settlement Administrator, will direct notice of the settlement via text message to each unique cellular phone number that was registered to receive text messages with Defendants.  (Settlement Agreement ¶ 4.2.)  Given that Defendants have received express consent from each class member to send a limited number of monthly text messages, and further because Defendants have not sent text messages to any Settlement Class Member during the course of this litigation, dissemination of the notice via text message is appropriate and would not violate the TCPA.  Second, to the extent that Settlement Class Members provided their e-mail addresses to Defendants when registering to receive text message alerts, RCI will also send the notice to each e-

19

mail address maintained in their records. (Settlement Agreement ¶ 4.3.)  Third, RCI, with the oversight of the Settlement Administrator, will establish a website serving as the "long-form" notice, which will provide uninterrupted access by the public to relevant Court documents and a downloadable claim form.  (True and accurate copies of the proposed notices and claim form are attached to the Settlement Agreement as Exhibits A, B1, B2, and C.)  The Parties expect the notice plan will be particularly effective here.  That is, the members of the Settlement Class are likely to be frequent e-mail and text message users, as evidenced by their online registration of their phone numbers to receive text messages.

The notices are neutral in tone and ultimately provide Settlement Class Members with a detailed explanation of their options, which will allow them to make an informed decision as to their participation in the settlement.  As such, the proposed notice plan comports with Rule 23 and the requirements of due process and should be approved by the Court.

**VIII.   CONCLUSION.**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (i) certifying the Settlement Class as defined in the Parties' Settlement Agreement and Release; (ii) appointing Christopher Kertesz as Settlement Class Representative; (iii) appointing Jay Edelson, Rafey Balabanian and Bradley Baglien as Class Counsel; (iv) preliminarily approving the Parties' Settlement Agreement; (v) approving the form and methods of the proposed notice; and (vi) granting such other and further relief as the Court deems reasonable and just.[1]

Dated: March 23, 2012                                       Respectfully Submitted,

                                                            CHRISTOPHER KERTESZ, individually,
                                                            and on behalf of all others similarly situated,

---

[1]      A proposed preliminary schedule of deadlines leading to final approval is contained in the [Proposed] Preliminary Approval Order attached to the Settlement Agreement as Exhibit D-1

By:   /s/ Steven Teppler
      One of Plaintiff's Attorneys

Steven Teppler
EDELSON MCGUIRE LLC
5715 Firestone Court
Sarasota, FL 34238
Telephone: (941) 487-0050

Jay Edelson
Rafey Balabanian
Bradley Baglien
EDELSON MCGUIRE LLC
350 N. LaSalle St.
Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6380

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on March 23, 2012, he caused the foregoing ***Motion for and Memorandum in Support of Preliminary Approval of Class Action Settlement*** to be electronically filed using the Court's CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: March 23, 2012

/s/ Steven W. Teppler_____
EDELSON MCGUIRE LLC
5715 Firestone Court
Sarasota, FL 34238
Telephone: (941) 487-0050
Facsimile: (312) 572-7210